UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ISAIAS BELTRAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19-cv-00003-GCS |
| | ) |
| JOHN BALDWIN, | ) |
| TYLER JONES, | ) |
| KUMBERLY BUTLER, | ) |
| ANTHONY MCALLISTER, | ) |
| JOSEPH YURKIVICH, and | ) |
| AUGUSTA WILLIAMS, | ) |
| | ) |
| Defendants.[1] | ) |

# MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Pending before the Court is Defendants' motion for summary judgment on exhaustion. (Doc. 47, 48). Plaintiff opposes the motion. (Doc. 54). For the reasons delineated below, the Court denies Defendants' motion for summary judgment as to exhaustion of administrative remedies.

## FACTUAL BACKGROUND

Plaintiff Isaias Beltran, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Stateville Correctional Center ("Stateville"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred at Menard Correctional Center ("Menard"). Plaintiff claims that on

---

[1] The Court **DIRECTS** the Clerk of the Court to change Defendant Williams's name on the docket to reflect the correct name contained in the answer. (Doc. 37).

August 26, 2016 the defendants used excessive force against him, conducted an "unconstitutional shakedown," denied him appropriate medical treatment, wrongfully placed him in unconstitutional housing conditions, and failed to discipline correctional officers who repeatedly violated prisoners' constitutional rights. (Doc. 1, p. 1-20). He seeks monetary damages. *Id.* at p. 20.

Beltran filed this lawsuit on January 2, 2019. (Doc. 1). In the April 15, 2019 screening order, the Court allowed Beltran to proceed on the following counts:

> **Count 1:** Eighth Amendment claim against Tyler Jones and John Doe defendants for excessive force and mistreatment related to the strip search and stress position he was forced to assume during the shakedown;
>
> **Count 2:** Eighth Amendment claim against Butler, Yurkovich, Baldwin and McAllister for enacting or encouraging a policy, widespread practice or custom underlying the conduct of the August 26, 2016 shakedown;
>
> **Count 3:** Eighth Amendment claim against Williams and John Doe defendants for deliberate indifference to a serious medical need;
>
> **Count 5:** Eighth and Fourteenth Amendment claim against Butler for tacitly approving of a widespread "code of silence" practice to suppress inmate complaints about mistreatment by prison staff;

(Doc. 8).[2]

On August 31, 2020, Defendants filed the motion for summary judgment on exhaustion. (Doc. 47, 48). Plaintiff filed his opposition on October 29, 2020. (Doc. 54). On January 8, 2021, this matter was assigned to the undersigned to conduct all proceedings in this case, including trial and final entry of judgment pursuant to 28 U.S.C. § 636(c) and

---

[2] On January 7, 2021, District Judge David W. Dugan directed the Clerk of the Court to terminate Defendant Lawrence and the unknown parties from the docket sheet. (Doc. 55).

Federal Rule of Civil Procedure 73. (Doc. 56). The Court held an evidentiary hearing on February 10, 2021 and took the matter under advisement. (Doc. 59). During the hearing, Sarah Johnson, Chairman with the Administrative Review Board ("ARB"), testified generally as to the grievance process within the IDOC. During the time frame in the complaint, Ms. Johnson was not assigned to review Beltran's grievances. Beltran did not testify.

Relevant to this action, the record contains Beltran's Cumulative Counseling Summary (Doc. 48-1); copies of three October 1, 2016 grievances related to the August 26, 2016 incident, which Beltran sent to the ARB that were filed stamped received by the ARB on December 22, 2016 (Doc. 60, p. 3-8); Beltran's December 17, 2016 letter to the ARB which was filed stamped received by the ARB on December 22, 2016 (Doc. 60, p. 21); and the ARB's January 11, 2017 Return of Grievance Form to Beltran stating that the October 1, 2016 grievance was being returned as untimely under Department Rule 504 (Doc. 60, p. 2).

## LEGAL STANDARDS

Summary judgment is "proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility *until such administrative remedies as are available are exhausted.*" *Id.* (emphasis added).

Generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of triable fact exists. *See Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). In *Pavey*, however, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury, but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g., Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

In *Pavey*, the Seventh Circuit set forth procedures for a court to follow in a situation where failure to exhaust administrative remedies is raised as an affirmative defense. The Seventh Circuit stated the following:

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Pavey*, 544 F.3d at 742.

As an inmate confined within the IDOC, Plaintiff was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims properly. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE

§ 504.820(a). The grievance officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. *See* 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures also allow an inmate to file an emergency grievance. *See* 20 ILL. ADMIN. CODE § 504.840. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine that] there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender [such that] the grievance [should] be handled on an emergency basis." 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender indicating what action shall be or has been taken." 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

## ANALYSIS

Defendants contend that they are entitled to summary judgment as Beltran did not exhaust his administrative remedies regarding the claims in this lawsuit. Specifically, Defendants argue that Plaintiff's Cumulative Counseling Summary does not reflect a submission of any grievance related to the August 26, 2016 incident in October 2016. Further, Defendants contend that Beltran acknowledges in his complaint that he failed to complete the grievance process properly. Beltran counters that he submitted three grievances regarding the August 26, 2016 incident on October 1, 2016, October 9, 2016,

and October 17, 2016 and that he did not get a response from Menard. Also, Beltran contends that he wrote a letter to the ARB on December 17, 2016 containing his grievances. In the letter, Beltran requested that the ARB address the grievances "due to the fact that Menard . . . is 'refusing' to address my grievance which I submitted to them multiple times already since 10/1/2016 -10/17/2016." (Doc. 54, p. 36). Further, Beltran asserts that Defendants were aware of this problem at Menard.

First, the record clearly indicates that Beltran was aware of the grievance procedures at Menard and that Beltran understood such steps when he filed his grievances with the prison and when he filed his complaint.

The Court notes that in some circumstances an inmate's ability to exhaust the grievance process may be thwarted. This can occur, for example, if an inmate properly submits a grievance, but does not receive a response. In such circumstances, an inmate's administrative remedies are arguably no longer available to him, and the inmate may thus proceed with a lawsuit. *See, e.g., Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000)(noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole*, 438 F.3d at 809 (noting that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his remedies).

Considering the record, the undersigned finds that Defendants have not carried their burden as to the exhaustion of administrative remedies. Beltran's version of events surrounding these three grievances and his attempts to exhaust appear to be internally consistent. He claims that he wrote three grievances on October 1, 2016, October 9, 2016,

and October 17, 2016, which were not responded to by staff at Menard. Once Beltran, who at the time was housed in segregation, submitted these grievances to the officers, he was no longer in control of the grievances. After he submitted these grievances, according to Beltran's affidavit, Beltran later wrote to the grievance counselor and the grievance officer to verify receipt of his grievances to no avail. His version of events is corroborated by his letter dated December 17, 2016 to the ARB. (Doc. 36). And, it is further corroborated by the cumulative counseling summary entry (Doc. 48-1, p. 12, 13) which references and confirms the fact that Beltran inquired about his grievances with Officer Coordinator Trisha Lawrence on February 15, 2017 and Counselor Nippe on February 26, 2017. Once Beltran submitted the grievances in accordance with the institution's rules and regulations, there was nothing further he could do. In light of the above, the Court finds that the failure of the institution to respond and/or process Beltran's grievances properly led to the grievance process being unavailable to him. Defendants did not meet their burden of proof, and their motion for summary judgment as to exhaustion of administrative remedies is denied.

## Conclusion

Based on the foregoing, the Court **DENIES** Defendants' summary judgment motion as to exhaustion of administrative remedies. (Doc. 47).

**IT IS SO ORDERED.**

Dated: February 16, 2021.

Digitally signed by Judge Sison 2
Date: 2021.02.16
12:04:36 -06'00'

GILBERT C. SISON
United States Magistrate Judge