IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ISAIAS BELTRAN,<br><br>      Plaintiff,<br><br>v.<br><br>JOHN BALDWIN, TYLER JONES,<br>KIMBERLY BUTLER, ANTHONY<br>MCALLISTER, JOSEPH YURKOVICH,<br>and AUGUSTA WILLIAMS,<br><br>      Defendants. | Case No. 3:19-CV-3-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendants John Baldwin, Tyler Jones, Kimberly Butler, Anthony McAllister, Joseph Yurkovich, and Augusta Williams ("Defendants"), all of whom are all current or former employees of the Illinois Department of Corrections ("IDOC"). (Doc. 69). Plaintiff Isaias Beltran, an IDOC inmate currently housed at Pontiac Correctional Center, alleges Defendants violated his constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution. (Docs. 1, 8). Beltran did not respond to Defendants' Motion for Summary Judgment. For the reasons set forth below, the Court grants the motion.

### FACTUAL BACKGROUND

Because Beltran did not respond to Defendants' motion, the Court considers Defendants' assertions of fact undisputed for purposes of summary judgment. FED. R. CIV. P. 56(e)(2).

Beltran was housed at Menard Correctional Center from about November 2008 to May 2019. (Doc. 70-1 at p. 2). On August 26, 2016, Menard was put on lockdown status, and a shakedown was conducted. (*Id.*). After the shakedown, Beltran was returning from the chapel to the west cell house living unit when he encountered Defendant Tyler Jones, a correctional officer at Menard. (Doc. 70-1 at p. 2). Beltran testified that Jones stopped him and pushed his head so aggressively that he almost fell down. (*Id.* at p. 5). Beltran asked Jones "what was that for" or "what was that about"? (*Id.*) Jones then grabbed Beltran's ID, told Beltran he had a "gay Latino name," threw him to the ground, and, along with other officers, started beating him. (*Id.*).

Beltran received a disciplinary ticket related to the incident. (Doc. 70-3). Jones issued the ticket to Beltran for assaulting Jones, disobeying a direct order, insolence, and unauthorized movement. (*Id.*). The ticket states that at approximately 10:40 a.m., Jones was escorting inmates from the chapel to the west house. (*Id.*). Beltran was talking in line and not keeping his head down. (*Id.*). Jones approached Beltran and gave him orders to stop talking and keep his head down. (*Id.*). Beltran refused both direct orders, called Jones a derogatory term, then head-butted Jones and charged him. (*Id.*). Jones fell to the ground, and Beltran stomped on his leg. (*Id.*). Other officers responded and placed Beltran on the ground to stop his aggressive behavior. (*Id.*).

Beltran pleaded not guilty to the ticket, asserting that Jones was the aggressor and that multiple officers beat him. (*Id.*). Beltran further claimed he was placed in his cell without anything to clean his wounds. (*Id.*). An hour later, a nurse appeared and looked at him for two seconds. (*Id.*). Beltran claimed that the nurse told him to wash his face with

soap, but that no one provided him with soap. (*Id.*).

Beltran's medical records indicate that at 11:10 a.m. on August 26, 2016, Defendant Augusta Williams treated Beltran for a superficial, one-inch abrasion to his left forehead. (Doc. 70-2 at p. 1). She noted there was scant bleeding, but no swelling or edema. (*Id.*). No other injuries were noted. (*Id.*). Williams informed Beltran to watch for signs of infection and to follow up if needed. (*Id.* at p. 2). Later that day, another nurse evaluated Beltran and found him medically cleared to be housed in segregation. (*Id.* at p. 3).

Beltran testified that he filed grievances regarding the incident on October 1, 2016, October 9, 2016, and October 17, 2016, but that he did not receive any responses at the institutional level. (Doc. 70-1 at p. 6; Doc. 54 at p. 34). On December 17, 2016, Beltran sent a letter directly to the Administrative Review Board (ARB) complaining that he received no responses to his grievances. (Doc. 54 at p. 36). The ARB returned the grievances to Beltran on January 11, 2017, noting they were not submitted in the timeframe outlined in Department Rule 504; thus, the issue would not be addressed further. (Doc. 60 at p. 2).

On January 2, 2019, Beltran filed a complaint in this Court pursuant to 42 U.S.C. § 1983. (Doc. 1). In his Complaint, Beltran alleges that on August 26, 2016, correctional officers at Menard Correctional Center required him and other inmates to stand in a "stressful position" for several hours while the shakedown was concluded. (Doc. 8). As the inmates were being led back to their cells, Jones allegedly falsely accused Beltran of talking, then began beating him. (*Id.*). Beltran also alleges that Nurse Williams ignored his complaints of pain and that a cut on his face would not stop bleeding. (*Id.*). Finally, Beltran asserts that a number of policies and widespread practices by Defendants Butler,

Yurkovich, Baldwin, and McAllister violated his constitutional rights. (*Id.*).

After preliminary review of his Complaint by the Court (Doc. 8), Beltran is proceeding on four claims:

> **Count 1:** Eighth Amendment claim against Defendant Jones for excessive force and mistreatment related to a strip search and stress position he was forced to assume during a shakedown.
>
> **Count 2:** Eighth Amendment claim against Defendants Butler, Yurkovich, Baldwin, and McAllister for enacting or encouraging a policy, widespread practice or custom underlying the conduct of the August 26, 2016 shakedown.
>
> **Count 3:** Eighth Amendment claim against Defendant Williams for deliberate indifference to a serious medical need.
>
> **Count 5:** Eighth Amendment and Fourteenth Amendment claim against Butler for tacitly approving of a widespread "code of silence" practice to suppress inmate complaints about mistreatment by prison staff.

Beltran testified that he sued Jones because "[h]e is the main defendant, the one that started everything." (Doc. 70-1 at p. 3). He sued Augusta Williams because she did not give him medical attention and did not want to see him. (*Id.* at p. 4). Beltran sued Kimberly Butler because she was the warden of Menard and "the one that had an idea of everything that goes on with these Orange Crush shakedowns." (*Id.* at p. 3). Beltran testified that he sued Anthony McAllister because he was the Southern Region Commander of the IDOC and Joseph Yurkovich because he was the Chief of Operations for the IDOC and responsible for supervision of the Orange Crush tactical unit. (*Id.*). He could not recall if McAllister and Yurkovich actually worked at Menard, and he admitted he had never heard of them prior to this incident. (*Id.* at pp. 3-4). It is undisputed that, at all relevant times, Yurkovich was not employed by the IDOC. (Doc. 70-4).

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *see also Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).

Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323.

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the non-movant. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted).

## DISCUSSION

Defendants move for summary judgment on four grounds. First, they argue all of Beltran's claims are barred by the statute of limitations. Second, they assert Beltran has failed to demonstrate that Butler, Baldwin, Yurkovich, and McAllister were personally responsible for the alleged deprivation of Beltran's constitutional rights. Third, they argue Beltran has failed to demonstrate that Williams was deliberately indifferent to his medical needs. And finally, they contend that qualified immunity shields Butler, Baldwin, McAllister, and Williams from liability. Because the Court finds that Beltran's claims are barred by the statute of limitations, it need not address Defendants' remaining arguments.

The statute of limitations for a Section 1983 claim in Illinois is two years. *Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). However, "the limitations period is tolled while a prisoner completes the administrative grievance process." *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012) (quoting *Walker v. Sheahan*, 526 F.3d 973, 978 (7th Cir. 2008)). "The statute of limitations begins to run on the date that the plaintiff knows or should know of the facts giving rise to his cause of action, tolls on the date that the plaintiff files a grievance, remains tolled throughout the grievance process, and begins to run again once the grievance process is complete." *Goings v. Pfister*, No. 20 C 1454, 2022 WL 602465, at *4 (N.D. Ill. Mar. 1, 2022) (citing *Gomez*, 680 F.3d 859, 864 (7th Cir. 2012)).

Here, the statute of limitations began to run on August 26, 2016, the date Beltran knew of the facts giving rise to his claims. The two-year statute of limitations would have ended on August 26, 2018, except that Beltran filed his first grievance on October 1, 2016.

The statute of limitations was then tolled from that date until the grievance process was complete. *See Gomez*, 680 F.3d at 864. The grievance process was complete when the ARB returned Beltran's grievances on January 11, 2017. The Court, then, must add 102 days—the period from October 1, 2016 to January 11, 2017—to the end of the statute of limitations. Thus, the two-year statute of limitations ended on December 6, 2018. *See Wagner v. Hardy*, 609 F. App'x 874, 876 (7th Cir. 2015) (holding the district court did not err in finding the statute of limitations ran from the date the plaintiff's claim accrued until he submitted his first grievance); *Brown v. Godinez*, No. 15 C 522, 2017 WL 2868951, at *4 (N.D. Ill. July 5, 2017) (finding the statute of limitations tolled, at most, for a one-month period beginning when plaintiff filed his first grievance). Because Beltran did not file his lawsuit until January 2, 2019, his claims are barred by the statute of limitations.

## Conclusion

Accordingly, the Court **GRANTS** the Motion for Summary Judgment filed by Defendants John Baldwin, Tyler Jones, Kimberly Butler, Anthony McAllister, Joseph Yurkovich, and Augusta Williams. Plaintiff Isaias Beltran shall recover nothing. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED: September 1, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**